UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNETTE RICHARDSON, et al., *on behalf of themselves and all others similarly situated*,

                Plaintiffs,

-v-

CITY OF NEW YORK,

                Defendant.

17-CV-9447 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

In December 2017, a group of African American employees of the Fire Department of New York ("FDNY") filed a lawsuit against the City of New York (the "City"), raising claims under 42 U.S.C. §§ 1981 and 1983 and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and alleging that FDNY discriminates against African Americans in its hiring, promotion, and compensation practices. (Dkt. No. 4.) In a prior opinion and order, this Court held that Plaintiffs' complaint plausibly alleged discrimination in FDNY's hiring and promotion practices but that it lacked sufficient factual allegations to raise a plausible inference that FDNY's compensation practices are similarly flawed. (Dkt. No. 26.) Plaintiffs now move to amend their complaint in order to, among other things, bolster their allegations of pay discrimination. (Dkt. No. 33.) For the reasons that follow, Plaintiffs' motion is granted.

**I.    Background**

Familiarity with the Court's prior opinion in this case is presumed. *See Richardson v. City of New York*, No. 17 Civ. 9447, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018).

Plaintiffs filed their initial putative class-action complaint in this case on December 1, 2017. *Id.* at *4. That complaint alleged, as relevant, that (1) FDNY hires disproportionately few

African Americans into its civilian[1] staff; (2) those African Americans who are hired are disproportionately hired into, and made to remain within, lower-paying civilian job positions; and (3) among those employees who occupy identical civilian job positions, African Americans receive disproportionately low compensation. *Id.* at *3. According to Plaintiffs, these disparities arise from intentional racial discrimination on the part of FDNY or, at a minimum, as an unintended consequence of FDNY's failure to take certain measures to constrain the discretion and alleged biases of the small group of individuals responsible for making civilian hiring, promotion, and compensation decisions. *Id.* at *3–4.

On February 5, 2018, the City moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible legal claim to relief. *Id.* at *5. In a September 28, 2018 opinion and order, this Court granted the City's motion in part and denied it in part. *Id.* at *1. In particular, the Court held that Plaintiffs' allegations supported the plausible inferences (1) that intentional racial discrimination affected FDNY's hiring and promotion decisions in violation of federal law and NYCHRL, *id.* at *5–9, and (2) that a set of identifiable FDNY employment practices caused an adverse, even if unintended, disparate impact on African Americans in the realm of hiring and promotion, in violation of NYCHRL, *id.* at *9–10. But the Court also held, as relevant, that Plaintiffs' factual allegations were insufficient to raise a plausible inference that "the compensation of FDNY's African American civilian employees meaningfully lags behind that of FDNY's other civilian employees," *id.* at *10, for purposes of either an intentional-discrimination claim or a disparate-impact claim, *see id.* at *8–10.

---

[1] FDNY's "civilian" staff consists of those employees who are neither firefighter staff nor emergency medical services ("EMS") staff. *Richardson*, 2018 WL 4682224, at *1.

2

Plaintiffs have now moved to file an amended complaint that, in their view, rectifies the deficiencies this Court found in their compensation claims.[2] (Dkt. No. 33.) The City opposes Plaintiffs' motion on futility grounds, arguing that the proposed amended complaint, just like the original complaint, fails to state a plausible pay-discrimination claim, whether under an intentional-discrimination theory or under a disparate-impact theory. (Dkt. No. 36.)

## II.     Legal Standards

Federal Rule of Civil Procedure 15 directs courts to "freely give leave" for a party to file an amended pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). In ruling on a motion to amend, "the Court should consider whether the motion is being made after an inordinate delay without adequate explanation, whether prejudice to the defendants would result, whether granting the motion would cause further delay, and whether the amendment would be futile." *Vt. Country Foods, Inc. v. So-Pak-Co., Inc.*, 170 F. App'x 756, 759 (2d Cir. 2006) (summary order) (quoting *Mountain Cable Co. v. Pub. Serv. Bd.*, 242 F. Supp. 2d 400, 403 (D. Vt. 2003)).

The City's sole argument in opposition to Plaintiffs' motion to amend is that amendment would be futile because the compensation claims in the proposed amended complaint would, like their predecessors in the original complaint, be subject to dismissal pursuant to Rule 12(b)(6). To state a claim capable of withstanding a Rule 12(b)(6) motion, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level" if assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the complaint's

---

[2] The proposed amended complaint also differs in other ways from Plaintiffs' initial complaint. For example, it adds some new plaintiffs and removes some original plaintiffs; removes certain claims involving FDNY's EMS staff; and modifies the proposed plaintiff classes. (Dkt. No. 33 at 1.) The City raises no objection to Plaintiffs' proposed amendments except to the extent that Plaintiffs seek to revive their compensation claims (*see* Dkt. No. 36 at 1 n.1), and the Court limits the scope of its discussion accordingly.

3

allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the context of employment discrimination, "the pleading requirements . . . are very lenient, even *de minimis*," *Robinson v. Gucci Am.*, No. 11 Civ. 3742, 2012 WL 259409, at *3 (S.D.N.Y. Jan. 27, 2012) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)), though a complaint's allegations must nevertheless at least "permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.

## III. Discussion

Plaintiffs' initial complaint sought to hinge a claim of FDNY-wide pay discrimination on a few anecdotal accounts, coupled with allegations that the median pay of employees known to be African American in two civilian job titles—Administrative Staff Analysts and Computer Associates—was less than the median pay of their white counterparts. *See Richardson*, 2018 WL 4682224, at *3. According to Plaintiffs' original complaint, it was "reasonable to believe," based on this evidence, "that statistically significant disparities exist between the compensation of white and African American employees in many job titles." (Dkt. No. 4 ¶ 116.)

This Court disagreed. The Court noted that Plaintiffs had "point[ed] to race-linked pay disparities in only two of the many civilian job positions available at FDNY," and that even within those two job positions, Plaintiffs had "allege[d] only that the median pay of the known white employees in each position [was] higher than the median pay of the known African American employees in the same position" without making any "effort to demonstrate that the white and African American employees being compared [were] similarly situated with respect to anything other than their job titles." *Richardson*, 2018 WL 4682224, at *8. In addition, the Court observed, Plaintiffs had given "no indication of how many employees holding [those] job titles [were] of unknown race and [were] therefore not reflected in the data." *Id*. Accordingly,

4

the Court concluded that Plaintiffs' pay-discrimination allegations, which boiled down to "isolated [anecdotal] instances" and "scattershot glimpses of statistical pay disparity," *id.* at *9, were insufficient to create a plausible inference of systemic race-linked pay disparities, and so failed to state either an intentional-discrimination claim under federal law and NYCHRL or a disparate-impact claim under NYCHRL, *see id.* at *9–10.

In their proposed amended complaint, Plaintiffs have taken several steps to address these problems. First, instead of alleging pay discrimination across FDNY's civilian workforce as a whole, Plaintiffs now focus their claims on only two of FDNY's eight civilian job categories, Management Specialists and Professionals (the "Covered Categories"). (*See* Dkt. No. 33 at 3; Dkt. No. 33-1 ("FAC") ¶ 114.) Second, Plaintiffs have now alleged that the mean or median pay of known African American employees in *four* job titles—up from two in the original complaint—is lower than the mean or median pay of similarly titled employees who are known not to be African American, and that those four job titles collectively include over half of the employees in the Covered Categories. (*See* Dkt. No. 33 at 3; FAC ¶¶ 117, 121, 136, 155, 164.) Third, Plaintiffs have now alleged that African American employees within at least three of these four job titles have received smaller raises on average than their similarly tenured peers of other races, thus undercutting the possibility that the pay disparities in those job titles are attributable solely to employees' relative seniority. (*See* Dkt. No. 33 at 3; FAC ¶¶ 130, 138–41, 156–57.) Fourth, Plaintiffs have made clear that their allegations of pay disparity are based on an analysis of between 85% and 93% of the employees—*i.e.*, those employees whose race is known—in each of the four job titles at issue.[3] (*See* Dkt No. 33 at 3; FAC ¶¶ 121, 136, 155, 164.)

---

[3] In addition, Plaintiffs have added further substance to their anecdotal accounts of pay discrimination. (*See* Dkt. No. 33 at 3–4; FAC ¶¶ 123–34, 145–49, 157–63.)

5

The Court concludes that it is plausible to infer from these allegations that race-linked pay disparities exist within the Covered Categories. To be sure, this Court previously found it implausible to infer the existence of such disparities throughout FDNY's *entire civilian workforce* from allegations that such disparities occurred within two exemplar job titles—particularly given that the Court had no way to assess the strength of even those limited allegations in light of Plaintiffs' failure to specify what percentage of employees within those exemplar job titles were of unknown race and so had been excluded from Plaintiffs' calculations. Here, though, the story is different. Plaintiffs ask the Court to infer the existence of race-linked pay disparities only within the Covered Categories, and they do so on the basis of allegations that such disparities exist within the four job titles that include most of the employees within those categories. Further, Plaintiffs have made clear that their allegations of disparities within these four job titles are based on data sets that are 85–93% complete. Particularly in light of the "exceedingly low burden that discrimination plaintiffs face even *after* they have survived a motion to dismiss," *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order), Plaintiffs have alleged facts from which it is at least plausible to infer that race-linked pay disparities persist throughout the Covered Categories.

The City, for its part, never squarely argues that Plaintiffs have failed to plausibly allege that race-linked pay disparities occur throughout the Covered Categories. Instead, the City argues only that Plaintiffs have failed to plausibly allege that these disparities arise as a result of intentional discrimination (Dkt. No. 36 at 1–4) or, for purposes of Plaintiffs' disparate-impact claim, as a result of an identifiable FDNY policy or group of policies (Dkt. No. 36 at 4–5).

The Court is not persuaded. With respect to intentional discrimination, the Court does not view Plaintiffs' pay-discrimination allegations in a vacuum. Rather, the Court has already

6

held that Plaintiffs have plausibly alleged that FDNY intentionally discriminates against African American employees and applicants in its hiring and promotion decisions. *Richardson*, 2018 WL 4682224, at *7–8. Because the Court has held it to be "at least plausible that FDNY stands out among City agencies for its comparatively low African American representation . . . as a result of systemic, intentional racial bias," *id.* at *8, it is likewise plausible to attribute the adequately alleged race-linked pay disparities within the Covered Categories to that same ill.

The City disagrees for two main reasons. First, construing Plaintiffs' proposed amended complaint as "conced[ing] that [FDNY] does *not* engage in systemic pay discrimination" outside the Covered Categories, the City finds it implausible to believe that FDNY discriminates against African American employees in two specific job categories but not elsewhere within its civilian workforce. (Dkt. No. 36 at 2.) This argument, however, misreads the complaint. With respect to the six job categories that fall outside the Covered Categories, the complaint "exclude[s]" one of them without explanation; maintains that the "allocation of overtime opportunities" within two of them might be influenced by racial discrimination, even if employees within those categories enjoy roughly egalitarian base salaries; and alleges that there *is* "salary differentiation," albeit on a relatively small scale, within the remaining three. (FAC ¶ 114.) Nothing in these allegations is inconsistent with the claim that racial discrimination more egregiously influences compensation within the Covered Categories, which happen to be two of the highest paying. (*See* FAC ¶ 24.)

Second, relying on *Burgis v. New York City Department of Sanitation*, 798 F.3d 63 (2d Cir. 2015), the City argues that Plaintiffs have insufficiently ruled out "non-discriminatory explanations," *id.* at 69, for the alleged pay disparities. (Dkt. No. 36 at 3.) But as the City itself recognizes, Plaintiffs *have* made allegations that, assumed true, diminish the likelihood that pay disparities in at least three of the job titles at issue are attributable to employees' relative

7

seniority. (*Id.*)  And, as the Court noted in its prior opinion, the plaintiffs in *Burgis* sought to rely on "statistics alone," *Richardson*, 2018 WL 4682224, at *7 (quoting *Burgis*, 798 F.3d at 69), to support an inference of intentional discrimination, and so were required to plead statistical disparities that made non-discriminatory explanations for those disparities "very unlikely," *Burgis*, 798 F.3d at 69.  Here, Plaintiffs do not seek to draw an inference of discrimination exclusively from the bare fact that race-linked pay disparities exist within the Covered Categories; rather, Plaintiffs rely as well on their plausible allegations of discrimination in hiring and promotion (*see* FAC ¶¶ 44–52), which in turn are set against the backdrop of "a 'long-standing pattern of low minority participation' at FDNY that has persisted since the 1970s without meaningful abatement," *Richardson*, 2018 WL 4682224, at *7 (quoting *United States v. City of New York*, 717 F.3d 72, 88 (2d Cir. 2013)).

Moreover, Plaintiffs have "buttress[ed] an inference of [pay] discrimination" within the Covered Categories with anecdotal accounts.  *Id.* at *8.  For example, FDNY allegedly hired Plaintiff Annette Richardson at a starting salary 20% lower than the salary she had been earning in her prior job, even though "[w]hite employees accepting jobs with FDNY . . . were not asked to take such large pay cuts."  (FAC ¶ 123.)  And as Richardson was subsequently accumulating added job duties without seeing any salary increase, a white colleague was allegedly receiving substantial raises without taking on any new duties.  (FAC ¶ 133.)  Similarly, Plaintiff Dino Riojas has received no discretionary pay raises in thirty-five years even though he allegedly has relevant job skills that the non–African American comparators who *have* received such raises do not.  (FAC ¶¶ 158–60.)  While not dispositive, these allegations, and others like them (*see* Dkt.

No. 33 at 4–5), add further plausibility to Plaintiffs' claims that FDNY's compensation decisions within the Covered Categories are routinely influenced by intentional racial discrimination.[4]

As for Plaintiffs' intentional-discrimination claims under federal law and NYCHRL, then, the Court concludes that Plaintiffs' proposed amendments would not be futile for purposes of stating a claim based on a theory of pay discrimination.

The Court therefore turns to the City's argument that Plaintiffs' proposed amendments regarding race-linked pay disparities are futile to the extent that they seek to introduce a disparate-impact claim under NYCHRL. (*See* Dkt. No. 36 at 4–5.) According to the City, it is implausible that the facially race-neutral employment policies Plaintiffs identify as contributing to the alleged disparities—briefly, FDNY's decision to allow "[a] small group of almost exclusively white managers" to make compensation decisions (FAC ¶ 187; *see also* FAC ¶ 189), coupled with FDNY's failure to monitor these decisions for bias (FAC ¶¶ 181–86)—would cause race-linked pay disparities within the Covered Categories but not within FDNY's other civilian job categories (Dkt. No. 36 at 4–5).

---

[4] Plaintiff Brenda McKiver, despite holding a job position that does not fall within the Covered Categories, also brings a standalone pay-discrimination claim. (FAC ¶ 118.) The City briefly challenges the plausibility of this claim, characterizing McKiver's factual allegations as "threadbare." (Dkt. No. 36 at 4.) But McKiver, who is African American, has alleged that she has the fifth lowest salary out of over one hundred FDNY employees who hold her job title, despite her twenty-three-year tenure in her current position. (FAC ¶¶ 13, 171.) Indeed, McKiver has further alleged that her salary has been surpassed by that of a white colleague who holds the same job title, performs identical job duties, and has been in the job position for eleven fewer years than McKiver has. (FAC ¶ 175.) These allegations satisfy McKiver's "*minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229–30 (2d Cir. 2014) (acknowledging that "[a] plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that [s]he was treated less favorably than similarly situated employees of other races," *id.* at 229, and observing that "'[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss," *id.* at 230 (alterations in original) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))).

As explained above, though, the proposed amended complaint does not rule out the possibility that pay disparities occur—albeit not necessarily in the same way or to the same degree—outside the Covered Categories. To be sure, if the evidence produced in discovery reveals that "the complained of [employment] practice[s] produce[] a disparate impact" in only a subset of FDNY's civilian workforce, but that the disparity disappears "when the entire [civilian workforce] is analyzed," the City may well be entitled to summary judgment on Plaintiffs' disparate-impact claim. *Wharff v. State Univ. of N.Y.*, 413 F. App'x 406, 409 (2d Cir. 2011) (summary order) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 369 (2d Cir. 1999), *overruled on other grounds*, *Meachem v. Knolls Atomic Power Lab.*, 461 F.3d 134, 140 (2d Cir. 2006)). But at this stage, Plaintiffs have plausibly alleged that a set of employment policies allows a small group of decisionmakers at FDNY to give way to "subconscious stereotypes and prejudices," *Gordon v. City of New York*, No. 14 Civ. 6115, 2016 WL 4618969, at *6 (S.D.N.Y. Sept. 2, 2016) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 990 (1988)), with the result that "[non–African American] employees receiv[e] 'preferential treatment in terms of . . . compensation,'" *id.* (quoting *Hagan v. City of New York*, 39 F. Supp. 3d 481, 490 (S.D.N.Y. 2014)). Plaintiffs need not allege that such a result materializes identically always and everywhere in order to raise a plausible disparate-impact claim at the pleading stage.

The Court therefore concludes that Plaintiffs' proposed amendments would not be futile for purposes of stating an NYCHRL disparate-impact claim based on a theory of race-linked pay disparities within the Covered Categories.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to amend is GRANTED. Plaintiffs shall file their amended complaint on or before April 22, 2019. The City is directed to answer or otherwise respond to the amended complaint within three weeks after it is filed.

10

The Clerk of Court is directed to close the motion at Docket Number 33.

SO ORDERED.

Dated: April 8, 2019
      New York, New York

_____
J. PAUL OETKEN
United States District Judge