UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNETTE RICHARDSON,
DEBORAH BOWMAN,
DEBRA POE,
DINO RIOJAS,
STEPHANIE THOMAS,
BRENDA McKIVER,
JON WATSON, and
ERICA RICHARDSON

On behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE THE AMENDED COMPLAINT'S DISPARATE IMPACT CLASS ALLEGATIONS**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Yuval Rubinstein*
*Tel: (212) 356-2467*
*Matter No. 2017-066659*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................................iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT

      POINT I

            THE RETIREMENTS OF ANNETTE RICHARDSON, DEBRA POE, AND STEPHANIE THOMAS RENDER MOOT THEIR CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF ....................................................................3

      POINT II

            PLAINTIFFS ERICA RICHARDSON AND DINO RIOJAS LACK STANDING.........................................................5

            A.    The Applicable Legal Standard .......................................................5

            B.    Erica Richardson Lacks Standing To Represent The Rejected Applicant Class.......................................7

                   1.    Richardson Is Not Eligible To Be A Member Of The Class Because She Never Took A Civil Service Examination For An FDNY Title ...........................................7

                   2.    Richardson Lacks Class Standing Even Under Plaintiffs' Overbroad And Amorphous Class Definition....................................9

            C.    Riojas Does Not Have Standing To Represent The Employee Class Because He Has "Asserted Only Claims Of Discrimination In Pay Since 2004"...............................................11

POINT III

THE COURT SHOULD STRIKE THE
AMENDED COMPLAINT'S DISPARATE
IMPACT CLASS ALEGATIONS..........................................................12

A. The Applicable Standard Before And After
*Dukes*............................................................................12

B. The FDNY's Alleged Failure To Adopt
"Widely Accepted Human Resources
Practices" Is Precisely The Type of "Policy
Against Having Uniform Employment
Practices" That *Dukes* Prohibits......................................13

C. Plaintiffs' Failure To Monitor Claim Goes To
Disparate Treatment, And In Any Case Is
Also A "Policy Against Having Uniform
Employment Practices"...................................................16

CONCLUSION ......................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Arizonans for Official English v. Arizona,*
    520 U.S. 43 (1997)................................................................................................3, 4

*Baffa v. Donaldson,*
    222 F.3d 52 (2d Cir. 2000)....................................................................................5, 7, 12

*Bain v. Cal. Teachers Ass'n,*
    891 F.3d 1206 (9th Cir. 2018) ..............................................................................4

*Blum v. Yaretsky,*
    457 U.S. 991 (1982)................................................................................................6, 10, 11

*Bolden v. Walsh Constr. Co.,*
    688 F.3d 893 (7th Cir. 2012) ..............................................................................13

*Brown v. Nucor Corp.,*
    785 F.3d 895 (4th Cir. 2015) ..............................................................................17

*Caridad v. Metro-North Commuter R.R.,*
    191 F.3d 283 (2d Cir. 1999)..................................................................................12

*Chen-Oster v. Goldman, Sachs & Co.,*
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)..................................................................4

*Chen-Oster v. Goldman, Sachs & Co.,*
    251 F. Supp. 3d 579 (S.D.N.Y. 2017)..................................................................4

*Chen-Oster v. Goldman, Sachs & Co.,*
    325 F.R.D. 55 (S.D.N.Y. 2018) ..........................................................................14, 15

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)................................................................................................4

*Comer v. Cisneros,*
    37 F.3d 775 (2d Cir. 1994)....................................................................................5

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007)....................................................................................6

*Dimuro v. Clinique Labs., LLC,*
    572 Fed. Appx. 27 (2d Cir. 2014) ........................................................................10

*Dukes v. Wal-Mart Stores, Inc.,*
    222 F.R.D. 137 (N.D. Cal. 2004) ........................................................................12

**Cases**                                                                                    **Pages**

*Dukes v. Wal-Mart Stores, Inc.*,
   964 F. Supp. 2d 1115 (N.D. Cal. 2013) .............................................................13, 15

*Fletcher v. ConvergEx Grp. LLC*,
   388 F. Supp. 3d 293 (S.D.N.Y. 2019)....................................................................11

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982)...............................................................................................7

*Gerstein v. Pugh*,
   420 U.S. 103 (1975)...............................................................................................5

*Gratz v. Bollinger*,
   539 U.S. 244 (2003)...........................................................................................6, 11

*Griffin v. Dugger*,
   823 F.2d 1476 (11th Cir. 1987) .............................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21-MC-92 (SAS),2008 U.S. Dist. LEXIS 38768 (S.D.N.Y. May 13, 2008)....................6

*Kassman v. KPMG LLP*,
   925 F. Supp. 2d 453 (S.D.N.Y. 2013)....................................................................2

*Kassman v. KPMG LLP*,
   416 F. Supp. 3d 252 (S.D.N.Y. 2018)..............................................................13, 16

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
   571 F.3d 672 (7th Cir. 2009) ................................................................................9

*Ladik v. Wal-Mart Stores, Inc.*,
   291 F.R.D. 263 (W.D. Wisc. 2013) .......................................................................3

*Lewis v. Casey*,
   518 U.S. 343 (1996)...............................................................................................6

*Lexmark v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)...............................................................................................6

*In re Navy Chaplaincy*,
   306 F.R.D. 33 (D.D.C. 2014)...............................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)...............................................................6, 10, 11, 12

**Cases**                                                                                  **Pages**

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014) ............................................................................7, 10

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016) ....................................................................................5

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1975) ...........................................................................................5, 8

*Tabor v. Hilti, Inc.*,
   703 F.3d 1206 (10th Cir. 2013) ...........................................................................15

*Valerio v. RNC Indus., LLC*,
   314 F.R.D. 61 (E.D.N.Y. 2016) .............................................................................9

*Velez v. Novartis Pharms. Corp.*,
   244 F.R.D. 243 (S.D.N.Y. 2007) .........................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................3, 12, 14, 15, 17

*Winfield v. Citibank, N.A.*,
   842 F. Supp. 2d 560 (S.D.N.Y. 2012) ...................................................................2

**Statutes**

Fed. R. Civ. P. 12 (b)(6) ..............................................................................................2

Fed. R. Civ. P. 23 ........................................................................................................2

Fed. R. Civ. P. 23(a) ...................................................................................2, 5, 6, 10, 13

Fed. R. Civ. P. 23(b)(2) ...............................................................................................4

Fed. R. Civ. P. 23(d)(1)(D) .........................................................................................2

Fed. R. Civ. Proc. 56 ...................................................................................................2

Local Civil Rule 56.1 ..................................................................................................3

N.Y.S. Civil Service Law § 61 ...................................................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

ANNETTE RICHARDSON,
DEBORAH BOWMAN,
DEBRA POE,
DINO RIOJAS,
STEPHANIE THOMAS,
BRENDA McKIVER,
JON WATSON, and
ERICA RICHARDSON

17 Civ. 09447 (JPO)

On behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.
---------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE THE AMENDED COMPLAINT'S DISPARATE IMPACT CLASS ALLEGATIONS

### PRELIMINARY STATEMENT

Plaintiffs are seven current or former African-American civilian employees of the New York City Fire Department ("FDNY") and one rejected applicant. The Amended Complaint alleges that the FDNY engages in systemic discrimination against African-American civilian applicants and employees with respect to hiring, promotion, and compensation. Plaintiffs purport to represent a putative class of African-American civilian employees and rejected applicants encompassing the period from December 1, 2014 to the present.

Defendant City of New York ("defendant") now moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. The eight plaintiffs' claims are riddled

with glaring deficiencies that render them patently unsuitable to serve as class representatives under Rule 23(a). But for five plaintiffs in particular – Annette Richardson, Debra Poe, Stephanie Thomas, Erica Richardson, and Dino Riojas – the deficiencies undermine their Article III standing as well.

Annette Richardson voluntarily retired from the FDNY on October 1, 2019 and ruled out any return to the FDNY, while Debra Poe and Stephanie Thomas retired earlier this year. As a result, these three plaintiffs' claims for injunctive and declaratory relief are now moot. Erica Richardson and Dino Riojas lack standing to represent the Rejected Applicant and Employee classes, respectively. Specifically, Erica Richardson never even took a competitive civil service examination for an FDNY title, and lacks the requisite personal stake to represent the Rejected Applicant Class members who *did* pass an examination. Riojas conceded in his interrogatory answers that he has "asserted only claims of discrimination in pay since 2004," and is thus ineligible to be a member of the putative Employee Class challenging the FDNY's promotional decisions.

Defendant also moves to strike plaintiffs' disparate impact class allegations pursuant to Rule 23(d)(1)(D).[1] The Court will be presented with a number of documents and statistical analyses in connection with plaintiffs' class certification motion. But the legal deficiency

---

[1] Defendant's February 5, 2018 motion to dismiss solely addressed the substance of plaintiffs' New York City Human Rights Law ("CHRL") disparate impact claims under Rule 12(b)(6). Indeed, defendant's prior motion expressly refrained from addressing whether plaintiffs' disparate impact class allegations satisfied Rule 23 based upon the Court's case law emphasizing that motions to strike class allegations are disfavored at the pleading stage. *See Kassman v. KPMG LLP,* 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013)*; Winfield v. Citibank, N.A.,* 842 F. Supp. 2d 560, 573-74 (S.D.N.Y. 2012). But now that class discovery is complete and plaintiffs are moving for class certification, defendant respectfully submits that this motion is timely. As noted below, plaintiffs' disparate impact class allegations are deficient from the face of the Amended Complaint, making a Rule 23(d)(1)(D) motion appropriate alongside defendant's forthcoming opposition to plaintiffs' class certification motion.

of plaintiffs' disparate impact class allegations shines through from the face of the Amended Complaint. Plaintiffs' theory is that the FDNY has failed to adopt "widely accepted human resources practices," such as a "rigorous performance appraisal system." But plaintiffs' argument offers *precisely* the type of "policy against having uniform employment practices" that is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011). Plaintiffs' decision to make the very argument the Supreme Court squarely rejected six-and-a-half years before this lawsuit was filed is simply baffling. Because this is the "rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class," *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 272 (W.D. Wisc. 2013), the Court should strike the disparate impact class allegations.

## STATEMENT OF FACTS

For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to defendant's Local Civil Rule 56.1 Statement of Undisputed Facts, dated May 26, 2020.

## ARGUMENT

## POINT I

### THE RETIREMENTS OF ANNETTE RICHARDSON, DEBRA POE, AND STEPHANIE THOMAS RENDER MOOT THEIR CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF

"Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n. 22 (1997)(internal quotations omitted). Plaintiffs Annette Richardson, Debra Poe, and Stephanie Thomas possessed Article III standing to seek injunctive and declaratory relief at the

"commencement of litigation" on December 1, 2017 because they were employed by the FDNY. But Richardson elected to retire from the FDNY on October 1, 2019. *See* Defendant's Local Rule 56.1 Statement ("Def. 56.1 Statement") ¶2. Thomas retired from the FDNY effective February 1, 2020, while Poe recently went on "separation leave" effective May 1, 2020, and has a pending retirement date of August 1, 2020. *Id.* ¶¶19-20. The three plaintiffs' retirements divest them of the "requisite personal interest" to seek prospective relief on behalf of themselves and the putative Employee Class. *Arizonans for Official English*, 520 U.S. at 72 (party's "resignation from public sector employment…mooted the case stated in her complaint").[2]

   The ability of former employees to seek prospective relief on behalf of a class has proven to be a difficult issue in similar cases. *Compare Chen-Oster v. Goldman, Sachs & Co*., 877 F. Supp. 2d 113, 121-122 (S.D.N.Y. 2012)(former employees did not have standing under Rule 23(b)(2) to seek injunctive and declaratory relief), *with* 251 F. Supp. 3d 579 (S.D.N.Y. 2017)(overruling 2012 ruling, as former employees' request for reinstatement entitled them to prospective relief). No such difficulty is present in this case. When Richardson was asked if she wished to return to work at the FDNY, Richardson unequivocally declared that she did not. Def. 56.1 Statement ¶3. Although Thomas and Poe retired from the FDNY after they were deposed, neither plaintiff has given any indication that they seek to return to the FDNY either. Absent a claim for reinstatement, these three plaintiffs lack the necessary personal stake to seek injunctive and declaratory relief. *See Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1214 (9th Cir. 2018)(case was moot absent evidence that plaintiff "intends to return to teaching").

---

[2] Richardson, Thomas, and Poe may still seek retrospective monetary damages even though their claims for injunctive and declaratory relief are now moot. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). But the three plaintiffs' retirements undermine their adequacy as class representatives to pursue such damages, as defendant will argue in its forthcoming opposition to plaintiffs' class certification motion.

Nor does the "class action exception" to mootness salvage these three plaintiffs' claim for prospective relief. In cases where the "claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," a court can "permit the class certification to relate back to the filing of the complaint[.]" *Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994)(internal quotations omitted). But the "inherently transitory" exception to mootness has two elements: "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016)(internal quotation omitted).

Richardson, Thomas, and Poe cannot reasonably argue that the first element is satisfied, as the other four plaintiffs may still seek prospective relief. In addition, public employment is simply not the type of "inherently transitory" situation the Supreme Court had in mind when it crafted this exception to mootness. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)(plaintiffs' subsequent convictions did not render moot their claims where "[p]retrial detention is by nature temporary"). Accordingly, the Court should dismiss as moot the claims for injunctive and declaratory relief asserted by Richardson, Thomas, and Poe.

**POINT II**

**PLAINTIFFS ERICA RICHARDSON AND DINO RIOJAS LACK STANDING**

**A.     The Applicable Legal Standard**

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418

U.S. 208, 216 (1975); *see also Baffa v. Donaldson*, 222 F.3d 52, 59 (2d Cir. 2000)("the district court properly found Baffa lacked standing because he was not a member of the class"). The Second Circuit has noted "[t]he rule that a class representative must be part of the class…is one of prudential standing[.]" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 100 (2d Cir. 2007)(internal citation and quotation marks omitted).[3]

Even where the plaintiff is eligible to be a member of the class, variations between the plaintiff's claim and the putative class may still undermine the plaintiff's standing to represent the class. *See Blum v. Yaretsky*, 457 U.S. 991 (1982); *Lewis v. Casey*, 518 U.S. 343 (1996); *Gratz v. Bollinger*, 539 U.S. 244 (2003). But "there is some 'tension' in [Supreme Court] case law as to whether 'variation' between (I) a named plaintiff's claims and (2) the claims of putative class members 'is a matter of Article III standing . . . or whether it goes to the propriety of class certification pursuant to [Fed. R. Civ. P. 23(a)].'" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 160 (2d Cir. 2012)(quoting *Gratz*, 539 U.S. at 263, n.15).

The Second Circuit has crafted a two-part analysis to harmonize this case law: "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual...injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA*, 693 F.3d at 162 (internal citations and quotations omitted). The Second Circuit has emphasized that "*NECA*'s two-part test, which derives from constitutional standing principles, is thus distinct from the criteria

---

[3] Although the Supreme Court's decision in *Lexmark v. Static Control Components, Inc*., 572 U.S. 118 (2014) cast doubt on the prudential standing rule, the Second Circuit has yet to resolve this issue. *See New York State Citizens' Coalition for Children v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019). But whatever the status of prudential standing after *Lexmark*, it is still "hornbook law that the class representative must be a member of the class." *In re Initial Pub. Offering Sec. Litig*., No. 21-MC-92 (SAS), 2008 U.S. Dist. LEXIS 38768, at *12 (S.D.N.Y. May 13, 2008).

that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).

**B.      Erica Richardson Lacks Standing To Represent The Rejected Applicant Class**

**1.      Richardson Is Not Eligible To Be A Member Of The Class Because She Never Took A Civil Service Examination For An FDNY Title**

The seven plaintiffs who filed the original Complaint on December 1, 2017 sought to represent a class comprised of both employees and rejected applicants.  Dkt. 4, ¶137.  But all seven of the original plaintiffs were successfully hired by the FDNY and were current employees as of that date.  Plaintiffs' bid to represent current employees *and* unsuccessful applicants was precisely the type of "across the board" class action that the Supreme Court largely prohibited in *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982); *see also Griffin v. Dugger*, 823 F.2d 1476, 1484-87 (11th Cir. 1987)(discussing demise of "across the board" class actions after *Falcon*).

The Amended Complaint attempted to address this baffling oversight by adding an unsuccessful applicant as a plaintiff, Erica Richardson.  But Richardson's belated addition to the case still fails to rectify the deficiency in plaintiffs' original complaint. Richardson lacks standing to represent the Rejected Applicant Class because she is "not a member of the class." *Baffa*, 222 F.3d at 59.

Plaintiffs' class allegations with respect to hiring focus on the competitive hiring process in which DCAS administers civil service examinations. Dkt. 55, ¶¶27-33. The Amended Complaint describes the civil service examination procedure, and alleges that "[b]ecause DCAS refers the same pool of candidates to FDNY and to other agencies seeking to fill Civilian positions with the same civil service titles, the percentages of African American employees in the Civilian

civil service positions at FDNY should be similar to the percentages of African American employees in the identical positions at other city agencies." *Id.* ¶33. The Amended Complaint further alleges that the FDNY "circumvents" this "standardized process" by, among other things, posting positions that are tailored to a particular candidate, using temporary employment agencies for hiring, and hiring heavily into positions for which no civil service examination is administered. *Id.* ¶¶34-42.

Based upon these allegations – and paragraph 33 in particular – the class of African-American applicants allegedly harmed are those who pass a DCAS civil service examination and are placed on an eligible list but are not appointed by the FDNY. Indeed, the Amended Complaint does not allege *any* class-wide facts specifically describing how African-American civilian applicants who apply directly to the FDNY (as opposed to taking a DCAS civil service examination) are subjected to race discrimination.[4]

Richardson, however, is ineligible to be a member of the Rejected Applicant Class because she never applied to take an examination for a civil service title that the FDNY utilizes. Richardson was unable to recall ever taking a civil service examination, and DCAS's records show that Richardson has only applied for DCAS's examinations for the Police Officer and Sanitation Worker titles. Def. 56.1 Statement ¶¶12-14. As a result, Richardson clearly does not "possess the same interest and suffer the same injury shared by *all members of the class* [s]he represents." *Schlesinger*, 418 U.S. at 216 (emphasis added).

---

[4] The Amended Complaint does allege that the FDNY "has twice passed over Employee Class member Liza Horsley's applications for promotion to Community Coordinator positions in favor of hires of outside white candidates[.]" Dkt. 55, ¶41. But plaintiffs concede in this sentence that Horsley is not a member of the Rejected Applicant Class, but was instead seeking a "promotion."

## 2. Richardson Lacks Class Standing Even Under Plaintiffs' Overbroad And Amorphous Class Definition

Although plaintiffs' factual allegations focus upon competitive class positions in which DCAS administers a civil service examination, plaintiffs' proposed definition for the Rejected Applicant Class is far broader and more amorphous. The definition encompasses "[a]ll African Americans who passed any applicable DCAS tests, possessed all other posted requirements for any posted FDNY Civilian vacancy, and applied and were rejected by FDNY for any such position[.]" Dkt. 55, ¶195. This extraordinarily broad definition appears[5] to include provisional hires in job titles for which DCAS has yet to administer an examination or establish an eligible list, as well as titles that are exempt from the civil service hiring process. *See* N.Y.C. Personnel Rules & Regulations, Rule V (discussing different types of appointments to positions).

The lack of congruence between the Amended Complaint's factual allegations and the overbroad class definition is highly prejudicial to defendant. Perhaps unsurprisingly, courts have often criticized such mischievous uses of class definitions to expand the scope of the class. *See Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 679 (7th Cir. 2009)("a proper class definition cannot be so untethered from the elements of the underlying cause of action that it wildly overstates the number of parties that could possibly demonstrate injury"); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 71 (E.D.N.Y. 2016)(rejecting proposed class definition encompassing non-managerial employees where plaintiff failed to provide information "which could support such a broad class definition at this stage").

---

[5] Plaintiffs' class definition is so convoluted that it is difficult to discern whether "pass[ing] any applicable DCAS tests" is a prerequisite, in which case Richardson would clearly fail to satisfy the class definition. Defendant assumes, for purposes of this motion, that the class definition is not so limited based upon the second clause referencing "any posted FDNY Civilian vacancy." But such confusion illustrates the numerous problems with plaintiffs' putative class that defendant will be detailing in its forthcoming opposition to plaintiffs' class certification motion.

Even if the Court accepts plaintiffs' amorphous class definition – which it should not – Richardson still fails to satisfy *NECA*'s second prong, as her individual claims do not present the "same set of concerns" as those members of the Rejected Applicant Class who *did* pass a DCAS civil service examination and were placed on an eligible list. Richardson testified that she applied online for the four FDNY titles mentioned in the Amended Complaint, and was interviewed for the Substance Abuse Counselor position. Def. 56.1 Statement ¶¶6-11. Richardson's experience applying directly to the FDNY, as well as communicating by email with the interviewer for the Substance Abuse Counselor position, is vastly different than the competitive civil service examination process that plaintiffs describe in paragraphs 27-33 of the Amended Complaint. In addition, the "one-in-three rule" significantly limits the FDNY's hiring discretion for positions in which the candidates are placed on an eligible list. *See* N.Y.S. Civil Service Law § 61. Because DCAS never placed Richardson on an eligible list for an FDNY title, the FDNY had far more discretion to choose amongst qualified candidates for these positions.

Richardson's experience applying to the FDNY differs vastly from many if not most putative members of the Rejected Applicant Class. This difference not only undermines Richardson's suitability as a class representative under Rule 23(a), but also her standing to represent the class. *Blum*, 457 U.S. at 999 ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which [s]he has not been subject."). Because Richardson's failure-to-hire claim "unavoidably generates significant differences in the proof that will be offered," *Ret. Bd. of the Policemen's Annuity & Benefit Fund*, 775 F.3d at 163, Richardson lacks class standing to represent the entire Rejected Applicant Class. *See also Dimuro v. Clinique Labs.,*

*LLC*, 572 Fed. Appx. 27, 29 (2d Cir. 2014); *Fletcher v. ConvergEx Grp. LLC*, 388 F. Supp. 3d 293, 297-298 (S.D.N.Y. 2019).

Admittedly, most cases applying *NECA* are securities and ERISA cases that differ from an employment discrimination class action. But the contrast with *Gratz* further illustrates why Richardson lacks class standing. The Supreme Court held that an unsuccessful transfer student's Equal Protection claim implicated the "same set of concerns" as freshman college applicants where "the criteria used to determine whether a transfer applicant will contribute to the University's stated goal of diversity are *identical* to that used to evaluate freshman applicants," and the minor difference in how race was used to make admission decisions "clearly has no effect on petitioners' standing[.]" 539 U.S. at 265-66 (emphasis in original). But in this case, the FDNY's hiring process when using an eligible list certified by DCAS is by no means "identical" to the hiring process for other titles. As a result, Richardson's claim is much closer to *Blum*, *supra.*

## C.    Riojas Does Not Have Standing To Represent The Employee Class Because He Has "Asserted Only Claims Of Discrimination In Pay Since 2004"

The putative Employee Class encompasses African-American civilian employees at the FDNY who were allegedly denied promotions. Dkt. 55, ¶¶197-202. Plaintiff Dino Riojas seeks to represent this Employee Class as well as the Employee Compensation Subclass. *Id.* ¶11. But the Amended Complaint does not identify any promotions that Riojas was allegedly denied because of his race. Nor is that omission a surprise. Riojas clarified in his interrogatory answers that "Plaintiff has asserted only claims of discrimination in pay since 2004." Def. 56.1 Statement ¶16. Riojas further testified that he has not sought any promotions to managerial positions at the FDNY because he does not wish to jeopardize his union protections. *Id.* ¶17. Based upon Riojas's interrogatory answer and his deposition testimony, Riojas is ineligible to be a member of the

Employee Class, *Baffa*, 222 F.3d at 59, and his pay discrimination claims clearly do not implicate "the same set of concerns" as the Employee Class. *NECA*, 693 F.3d at 162.[6]

**POINT III**

**THE COURT SHOULD STRIKE THE AMENDED COMPLAINT'S DISPARATE IMPACT CLASS ALEGATIONS**

**A.      The Applicable Standard Before And After *Dukes***

Prior to the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), one of the most common ways of certifying a class in an employment discrimination case was to assert that "the delegation to supervisors, pursuant to company-wide policies, of discretionary authority without sufficient oversight" led to discrimination. *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999); *see also Velez v. Novartis Pharms. Corp*., 244 F.R.D. 243, 258-59 (S.D.N.Y. 2007). The *Dukes* case itself was in this mold. *See Dukes v. Wal-Mart Stores, Inc*., 222 F.R.D. 137, 151 (N.D. Cal. 2004)("[T]he Court is satisfied that the subjective nature of Defendant's personnel practices does not defeat commonality in this case[.]").

The Supreme Court's decision upended this widely-used approach. The Court held that "Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters…is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." 564 U.S. at 355 (emphasis in original). As a result, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at

---

[6] When Riojas was asked about the discrepancy between the Amended Complaint and his interrogatory answer, Riojas testified that he may still represent the Employee Class even though his individual claim only pertains to pay discrimination. Def. 56.1 Statement ¶18. This position is simply not tenable under *NECA*.

355-56.  Absent evidence of a "common mode of exercising discretion that pervades the entire company," the mere delegation of subjective decision-making authority does not establish a common question of fact.  *Id.* at 356.

Soon after the Supreme Court issued its decision, many class action plaintiffs attempted to reframe their existing claims to satisfy *Dukes*. But courts quickly caught on to these gambits.  *See Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012)("*Wal-Mart* tells us that local discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity"); *Dukes v. Wal-Mart Stores, Inc.*, 964 F. Supp. 2d 1115, 1126-27 (N.D. Cal. 2013)("*Dukes II*")(plaintiffs' argument that they are challenging "common subjective criteria" used to make employment decisions "leaves Plaintiffs right back where they started: challenging *Wal-Mart's* practice of delegating discretion to local managers"); *see also Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 275-76 (S.D.N.Y. 2018)(discussing post-*Dukes* cases rejecting plaintiffs' attempt to repackage their claims). For the reasons noted below, plaintiffs' own complaint makes clear that their class-wide disparate impact claim offers nothing more than "repackaged delegated discretion."  *Dukes II*, 964 F.Supp.2d at 1126.

**B.     The FDNY's Alleged Failure To Adopt "Widely Accepted Human Resources Practices" Is Precisely The Type of "Policy Against Having Uniform Employment Practices" That *Dukes* Prohibits**

The Amended Complaint alleges that the "interaction of four factors produces…racial disparities in job selections and compensation." Dkt. 55, ¶33.  Plaintiffs clarified in their March 5, 2018 opposition to defendant's motion to dismiss that the first of these four factors – the "fail[ure] to adopt or implement systematically widely accepted human resources practices that reduce the opportunity for discrimination, including policies and practices in connection with performance appraisals, posting of vacant positions, and monitoring of decisions for patterns of racially skewed outcomes" – allegedly causes a disparate impact. The other three

factors "apply to the pattern or practice claims." Dkt. 17 at p. 15. The Court's September 28, 2018 decision characterized plaintiffs' disparate impact claim as "challeng[ing] the ad hoc and subjective way that FDNY is alleged to have long approached its civilian employment decisions." Dkt. 26 at p. 28.

Although the eight plaintiffs may pursue this disparate claim under the CHRL *individually*, plaintiffs cannot pursue such a claim on a *class-wide* basis because there is no common question of fact under Rule 23(a). Indeed, plaintiffs have pled themselves out of court by alleging that the FDNY has failed to adopt "widely accepted human resources practices." The key allegation, for purposes of this motion, is contained in paragraph 91:

> FDNY has failed to implement a rigorous performance appraisal system. As a result, the agency does not have a record of unbiased evaluations to review when an employee seeks advancement, making it easy to inject subjective and biased factors into the decision-making process.

Dkt. 55, ¶91.

This allegation flies directly in the face of *Dukes*. Plaintiffs themselves are asserting that the FDNY maintains a "'policy' of *allowing discretion* by local supervisors over employment matters." *Dukes*, 564 U.S. at 355 (emphasis in original). This alleged "policy *against having* uniform employment practices" is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Id.* (emphasis in original). The Court recently reiterated this point. *See Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 73 (S.D.N.Y. 2018)("In *Dukes*…it was the absence of a common job evaluation procedure that precluded class certification on the plaintiffs' disparate impact claim[.]")(internal quotations omitted). It is completely mystifying as to why plaintiffs would make the FDNY's alleged "fail[ure] to implement a rigorous performance system" the centerpiece of their class-wide disparate impact claim, as this lawsuit was filed six-and-a-half years after the Supreme Court's decision.

Even where the Amended Complaint attempts to pinpoint facially neutral policies that are applicable to the putative class, it still falls short of *Dukes*. For example, plaintiffs allege that the FDNY "implemented the appraisal system in a flawed manner since 2010" and that "[m]any, if not most, African Americans still do not receive annual performance evaluations." Dkt. 55, ¶ 94. Plaintiffs similarly maintain that the FDNY's 8% cap on discretionary raises "is enforced only against African-American employees" whereas "white employees received raises in excess of 8%." *Id.* ¶179.

Plaintiffs are not alleging that these facially neutral policies themselves serve as a conduit for discriminatory decision-making. To the contrary, plaintiffs allege that the failure to *adhere* to these policies serves to discriminate against African-American civilians. Once again, *Dukes* forecloses this very argument. *Dukes II*, 964 F. Supp. 2d at 1127 ("Plaintiffs do not argue in substance that the criteria themselves, *faithfully applied*, led to a disparate impact.")(emphasis added); *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1229 (10th Cir. 2013)(plaintiffs "have not shown that Hilti maintained 'a common mode of exercising discretion that pervade[d] the entire company' where "the record suggests that Hilti failed to maintain the GDCP system in any uniform manner")(quoting *Dukes*, 564 U.S. at 356)(brackets in original).

The Court's recent decision in *Chen-Oster* is particularly instructive. The Court noted that "each of the class members was subject to [the 360 review and quartiling] processes," "all promotions from Vice President were awarded through the cross-ruffing process," and "360 reviews inform quartiling decisions, which, in turn, inform promotion decisions." 325 F.R.D. at 74 (brackets in original). As a result, the employer's "use of 360 reviews, quartiling, or cross-ruffing raises yes-or-no questions that can each be answered 'in one stroke.'" *Id.* at 75 (quoting *Dukes*, 564 U.S. at 350). But in stark contrast to *Chen-Oster*, plaintiffs are making a diametrically

opposed argument in this case. Throughout the Amended Complaint, plaintiffs bemoan the *absence* of standardized evaluation procedures at the FDNY akin to 360 reviews, quartiling, and cross-ruffing. Dkt. 55, ¶¶90-98. Because plaintiffs themselves do not assert that the FDNY relies upon a "common mode of exercising discretion," plaintiffs' disparate impact class allegations are deficient from the face of the Amended Complaint.

**C.     Plaintiffs' Failure To Monitor Claim Goes To Disparate Treatment, And In Any Case Is Also A "Policy Against Having Uniform Practices"**

The fourth "widely used human resources practice" that the FDNY and the City have allegedly failed to adopt is the "monitoring of decisions for patterns of racially skewed outcomes." Dkt. 55, ¶3. The Amended Complaint, somewhat confusingly, double counts this alleged practice by including it as one of the human resources practices the FDNY has failed to adopt *and* one of the "four factors [that] produces…racial disparities in job selections and compensation." *Id.* In any event, the factual allegations in paragraphs 99 to 110 of the Amended Complaint make clear that the alleged failure to monitor the FDNY's decision-making goes to plaintiffs' pattern or practice disparate treatment claim. Plaintiffs' opposition to defendant's motion to dismiss effectively conceded as much. Dkt. 17 at p. 15, n.9 ("The failure to monitor claim also arguably gives rise to a pattern or practice claim."). In *Kassman*, the Court addressed the employer's alleged failure to "remedy known disparities" against women in its pattern or practice analysis. 416 F. Supp. 3d at 283-84. Plaintiffs' "failure to monitor" argument should similarly be analyzed as part of their pattern or practice claim, rather than their class-wide disparate impact claim.

Even assuming the "failure to monitor" argument is applicable to plaintiffs' class-wide disparate impact claim, it suffers from the exact same defect identified above. Plaintiffs' focus on what the FDNY and City of New York have allegedly *failed* to do is "just the opposite of

a uniform employment practice that would provide the commonality needed for a class action." *Dukes*, 564 U.S. at 355; *see also In re Navy Chaplaincy*, 306 F.R.D. 33, 52 (D.D.C. 2014)(plaintiffs' theory "that the Chaplain Corps lacks effective protections against discriminatory decision-making by individual chaplains" is "precisely the one rejected by *Walmart* and its progeny").[7]

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests that the Court enter partial summary judgment against plaintiffs Annette Richardson, Erica Richardson, Dino Riojas, Stephanie Thomas, and Debra Poe, strike the Amended Complaint's disparate impact class allegations, and grant defendant costs and disbursements, together with such further other and further relief as the Court deems just and proper.

Dated:      New York, New York
            May 26, 2020

                                      **JAMES E. JOHNSON**
                                      Corporation Counsel of the
                                        City of New York
                                      Attorney for Defendant
                                      100 Church Street, Room 2-115
                                      New York, New York 10007-2601
                                      (212) 356-2467

---

[7] Defendant is aware of one post-*Dukes* decision holding that an employer's inaction can support a class-wide disparate impact claim. *See Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015). In a sharply divided opinion, the majority held that "[a] specific employment practice or policy can comprise affirmative acts or inaction." 785 F.3d at 916. But the majority did not cite any supporting language in *Dukes*, and somewhat puzzlingly cited a 1991 decision analyzing an employer's responsibility for a hostile work environment instead. The dissent cogently noted the majority's position "resembles a theory that *Wal-Mart* out-and-out rejected," as "'[i]naction' -- letting supervisors do as they wish -- is just discretion by another name. '[I]t is a policy <u>against having</u> uniform employment practices.'" *Id.* at 946 (Agee, J., dissenting)(quoting *Dukes*, 564 U.S. at 355)(emphasis in original). As noted above, defendant does not suggest that an employer's inaction cannot be considered at all on a motion for class certification. Rather, this issue is applicable to a pattern or practice claim rather than a class-wide disparate impact claim, as in *Kassman*.

By:     /s/
_____
Yuval Rubinstein
Assistant Corporation Counsel