**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ANNETTE RICHARDSON, *et al.* | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | Civil No. 17-CV-9447 (JPO) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| CITY OF NEW YORK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE THE AMENDED COMPLAINT'S DISPARATE IMPACT ALLEGATIONS

# Table of Contents

I.  INTRODUCTION ............................................................................................................1

II.  STATEMENT OF FACTS FOR SUMMARY JUDGMENT MOTION ...............................3

III.  ARGUMENT ................................................................................................................3

   A.  THE CITY SHOULD NOT BE ALLOWED TO INCREASE THE CLASS
   CERTIFICATION BRIEFING BY CHARACTERIZING ITS FILING AS ONE FOR
   SUMMARY JUDGMENT AND TO STRIKE ......................................................................3

   B.  ERICA RICHARDSON HAS STANDING TO REPRESENT THE REJECTED
   APPLICANT CLASS....................................................................................................5

     1.  The Rejected Applicant Class Includes All African Americans Who Met the Stated
     Requirements for a Civilian Position and Unsuccessfully Applied for that Position, Not Just
     African Americans Who Applied for Positions for Which the City Administered a Test. .....6

     2.  Ms. Richardson's Claims Raise the Same Set of Concerns As Do the Claims of Other
     Members of the Class Alleged in the Amended Complaint. ................................................9

   C.  DEBRA POE HAS STANDING TO SEEK DECLARATORY AND INJUNCTIVE
   RELIEF....................................................................................................................13

   D.  THE CITY'S MOTION TO DISMISS THE CLASS-WIDE NATURE OF THE
   DISPARATE IMPACT CLAIMS SHOULD BE DENIED, BOTH BECAUSE OF ITS
   TIMING AND BECAUSE IT IS WRONG ON ITS MERITS. ..............................................14

     1.  The City's Motion Is Paradoxically Both Too Late and Premature………..…………14

     2.  This Case Arises Out of Decisions Made by a Small Number of High-Ranking
     Officials, Not Decisions Made by Thousands of Managers As in *Dukes*. ..........................17

Page(s)

**Cases**

*Ahmed v. HSBC Bank U.S.*,
No. ED CV 15-2057-FMO, 2017 U.S. Dist. LEXIS 162988 (C.D. Cal. Sept.
25, 2017) .................................................................................................................4

*Campbell v. Chadbourne & Parke LLP*,
No. 16-CV-6832 (JPO), 2017 U.S. Dist. LEXIS 91289 (S.D.N.Y. 2017)
(Oetken, J.) ..............................................................................................................4

*Cardinale v. Quorn Foods, Inc.*,
No. 3:09-CV-1660(JCH), 2010 U.S. Dist. LEXIS 31527 (D. Conn. 2010) ............6

*Ceara v. Deacon*,
No. 13-CV-6023 (KMK), 2017 U.S. Dist. LEXIS 9645 (S.D.N.Y. Jan. 23,
2017), *vacated & remanded on other grounds*, 916 F.3d. 208 (2d Cir. 2019) ................ 14, 16

*Chen-Oster v. Goldman, Sachs & Co.*,
325 F.R.D. 55 (S.D.N.Y. 2018) .........................................................................18

*Davis v. Bryan*,
810 F.2d 42 (2d Cir. 1987) ...............................................................................14

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ......................................................................18

*Fed. Deposit Ins. Corp. v. Countrywide Fin. Corp.*,
No. 2:12-CV-4354 MRP, 2012 U.S. Dist. LEXIS 167696 (C.D. Cal. Nov. 21,
2012) ...................................................................................................................10

*Halloran v. Harleysville Preferred Ins. Co.*,
No. 3:16-cv-00133 (VAB), 2018 U.S. Dist. LEXIS 191215 (D. Conn. Oct. 19,
2018) ...................................................................................................................16

*Hamilton v. City of New York*,
No. 06 Civ. 15405 (DC), 2011 U.S. Dist. LEXIS 51919 (S.D.N.Y. May 10,
2011) ...................................................................................................................14

*In re Johnson*,
760 F.3d 66 (D.C. Cir. 2014) ............................................................................18

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) ............................................................................. 4, 18

*Kjessler v. Zaappaaz, Inc.*,
  No. 4:18-0430, 2019 U.S. Dist. LEXIS 119296 (S.D. Tex. Apr. 24, 2019) ......................... 10

*Lakah v. UBS AG*,
  No. 07 Civ. 2799 (MGC), 2014 U.S. Dist. LEXIS 154231 (S.D.N.Y. Oct. 30,
  2014) ................................................................................................................................. 14

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .......................................................................................................... 10

*In re Livent, Inc. Noteholders Sec. Litig.*,
  355 F. Supp. 2d 722 (S.D.N.Y. 2005) ............................................................................... 14

*Monaco v. Sullivan*,
  737 F. Appx. 6 (2d Cir. 2018) ..................................................................................... 11, 13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) .......................................................................................... 9, 10

*United States v. Johnson*,
  No. 19-874, 2020 U.S. App. LEXIS 17736 (2d Cir. June 5, 2020) ...................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................. 3, 14, 17, 18

*Yang v. Everyday Beauty Amore Inc.*,
  No. 18-cv-729 (BMC), 2018 U.S. Dist. LEXIS 171153 (E.D.N.Y. Oct. 3,
  2018) ............................................................................................................................. 10, 11

**Statutes**

29 U.S.C. § 201 ...................................................................................................................... 10

42 U.S.C. § 1981 ...................................................................................................................... 7

Code § 8-107.1(a)(3) .............................................................................................................. 7, 9

**Rules**

Fed. R. Civ. P. 1 ...................................................................................................................... 4

Fed. R. Civ. P. 23 ................................................................................................................. 5, 11

Local Rule 56.1 ........................................................................................................................ 3

## I. INTRODUCTION

The City filed its motion for partial summary judgment and to strike Plaintiffs' disparate impact allegations ("City's Motion" or "City Mot.") (ECF No. 75) on the same day that Plaintiffs filed their class certification motion ("Class Motion") (ECF No. 79). The City's Motion is a thinly disguised attempt to anticipatorily challenge certain aspects of the Class Motion. The City should not be allowed to use this procedural device to increase its filings in opposition to class certification from one to three (adding its memorandum in support of its Motion and a reply memorandum to be filed in July). This multiplication of filings is especially improper because the City did not know what arguments Plaintiffs would advance in support of class certification, making the City's Motion an inefficient means of raising challenges to class certification. The City's Motion for summary judgment against Plaintiffs Erica Richardson and Debra Poe on standing grounds and to strike the Amended Complaint's disparate impact allegations should be denied for this reason alone.[1]

If the Court considers the merits of the City's arguments, however, the City in its supporting memorandum ("Def. Mem.") (ECF No. 76) misconstrues Plaintiffs' Amended Complaint (ECF No. 55) (sometimes referred to as "AC") as asserting claims that the City discriminated against African American hiring applicants for positions with the Fire Department of New York ("FDNY") only if their names appeared on a certified list prepared by the City's Department of Citywide Administrative Services ("DCAS") after they passed a DCAS-administered test. Plaintiff Erica Richardson applied unsuccessfully for four positions with the

---

[1]    Plaintiffs do not oppose the motion for partial summary judgment insofar as it seeks an order that the claims of Plaintiffs Annette Richardson and Stephanie Thomas for declaratory and injunctive relief became moot when they retired and that Plaintiff Dino Riojas lacks standing to assert claims that the Fire Department of New York discriminated against African American employees in its promotion decisions.

FDNY, none of which involved testing by DCAS. Thus, the City argues, Ms. Richardson lacks standing to represent the Rejected Applicant Class. However, the Amended Complaint does not allege such a narrowly defined class. Indeed, the City's construction would have excluded about two-thirds of the proposed Rejected Applicant Class.

The City then argues that, if the proposed class is as broad as alleged, Ms. Richardson lacks standing because her claim as someone who did not take a test raises different concerns than do the claims of African Americans who passed a test. The City misconstrues the Second Circuit decision on which it relies to establish its standing test. But even if the City has properly interpreted the decision, positions filled from certified lists and positions filled after postings, such as those to which Ms. Richardson responded, raise similar concerns. Regardless of the type of position, the same small group of FDNY decision-makers made hiring decisions. All members of the proposed Rejected Applicant Class challenge this centralized decision-making process under both disparate treatment and disparate impact theories.

The City also moves for summary judgment against the claims of Plaintiff Debra Poe for declaratory and injunctive relief. But although the City asks the Court to treat her equivalently to two other Plaintiffs who recently retired, Ms. Poe currently is on leave; she has not retired. She has a continuing interest in changes at FDNY at least until she retires.

Finally, the City belatedly moves to dismiss Plaintiffs' disparate impact claims on behalf of the proposed classes and subclass. The City has waived this affirmative defense by delaying over two years to assert it when assertion was required at the "earliest possible moment." And the City's Motion, when finally made, was misdirected. If the City would have waited just one day longer before asserting this defense, it could have read Plaintiffs' memorandum in support of the Class Motion, which identifies the human resources ("HR") practices that plaintiffs identify

as giving rise to their disparate impact claims somewhat differently than in the Amended Complaint. More important, the City's argument is flawed on its merits. As explained in their memorandum in support of class certification, Plaintiffs seek to establish commonality for their disparate impact (as well as disparate treatment) claims based on the small number of decision-makers at FDNY rather than on the existence of a policy or practice implemented by a large number of decision-makers. The City's arguments based on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), do not apply to a class for which the "glue" holding the claims together is centralized decision-making.

## II.   STATEMENT OF FACTS FOR SUMMARY JUDGMENT MOTION

Defendant's Statement of Facts is accurate insofar as it goes, albeit with one statement that is irrelevant. However, the City omits critical facts material to its Motion for summary judgment against the claims of Erica Richardson and against the claims of Debra Poe for declaratory and injunctive relief. See Plaintiffs' Local Rule 56.1 Response to City's Statement of Facts and Statement of Additional Material Facts ("Pls. 56.1 St."), which accompanies this Opposition.

## III.   ARGUMENT

### A.      *THE CITY SHOULD NOT BE ALLOWED TO INCREASE THE CLASS CERTIFICATION BRIEFING BY CHARACTERIZING ITS FILING AS ONE FOR SUMMARY JUDGMENT AND TO STRIKE*

The Second Amended Civil Case Management Plan ("SACCMP") (ECF No. 66), provides that Plaintiffs file their Class Motion by May 26, 2020, the City file its opposition within 30 days (June 25, 2020), and Plaintiffs file a reply within 15 days (July 10, 2020). *Id.* ¶ 11. It makes no provision for a motion to strike allegations related to the claims of the proposed class or a motion for summary judgment related to standing issues. Indeed, after the City filed its

Motion, the parties had to negotiate a proposed briefing schedule that the Court adopted because the possibility of such a motion had not been discussed previously. (ECF Nos. 81, 82.)

The City's Motion raises issues directly concerning class certification: the scope of the definition of the proposed Rejected Applicant Class; the ability of Plaintiff Erica Richardson to represent members of the Rejected Applicant Class who unsuccessfully sought a position at FDNY through a different application process than she used; the ability of retired, or possibly retiring, Plaintiffs to represent the Employee Class in seeking declaratory or injunctive relief; and the propriety of pursuing disparate impact claims on behalf of the Employee Class. Every one of these issues would be proper topics for an opposition to the Class Motion.

Early motions to strike class allegations are strongly disfavored. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013). Courts generally deny the motions unless they "address[] issues 'separate and apart from the issues that will be decided on a class certification motion.'" *Campbell v. Chadbourne & Parke LLP*, No. 16-CV-6832 (JPO), 2017 U.S. Dist. LEXIS 91289, *9-10 (S.D.N.Y. 2017) (Oetken, J.) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). As discussed above, the issues raised in the City's Motion are not "separate and apart from the issues that will be decided on a class certification motion." The motion can be denied for that reason alone.

But at least early motions to strike or early motions for summary judgment could, in theory, serve a purpose by reducing the scope of potential class discovery, thereby making the proceedings speedier and less expensive. *See* Fed. R. Civ. P. 1; *Ahmed v. HSBC Bank U.S.*, No. ED CV 15-2057-FMO (SPx), 2017 U.S. Dist. LEXIS 162988, at *9-12 (C.D. Cal. Sept. 25, 2017) (allowing class discovery because plaintiffs had "made at least a minimal showing there are class-wide issues that warrant allowing plaintiffs the opportunity to pursue reasonable class-

wide discovery that may substantiate their allegations," but explaining that class discovery should not be allowed if plaintiffs fail to make "a prima facie showing that the class action requirements of Rule 23 are satisfied" or to show "discovery is likely to substantiate the class allegations"). Here, however, class discovery has concluded. The City's Motion serves no purpose at all – other than to increase the number of pages of briefing.

Increasing the briefing on class certification is inappropriate. Pursuant to the parties' agreement, the Court has limited briefing on the Class Motion to 40 pages each. (ECF Nos. 73, 74.) The City's Motion should be denied for allowing it, *sub silentio*, to increase its pages in opposition to class certification without directly asking the Court for additional pages.

### B. ERICA RICHARDSON HAS STANDING TO REPRESENT THE REJECTED APPLICANT CLASS.

The City adopts two strategies in arguing against Ms. Richardson's standing to represent the Rejected Applicant Class. First, it tries to redefine the proposed class to include only African Americans who unsuccessfully applied for "competitive" positions for which DCAS administered a test and prepared a certified list of candidates. While the City has a good business reason to argue for this class definition – it would cut the Rejected Applicant Class by about two-thirds, thereby slashing the City's potential liability – it points to no legal basis for redefining the class. Second, the City argues that if the Rejected Applicant Class includes both African Americans who passed DCAS-administered tests and African Americans who applied for positions that did not require testing, Ms. Richardson does not have the "same set of concerns" as the class members who passed a DCAS test and thereafter were not hired by FDNY. Plaintiffs dispute whether "same set of concerns" is the appropriate standard for standing to represent a class in this case. But even if it is the proper standard, all members of the proposed Rejected

Applicant Class have the same set of concerns in that they all were rejected for employment as a result of the same centralized hiring process, and therefore Richardson has standing.

**1. The Rejected Applicant Class Includes All African Americans Who Met the Stated Requirements for a Civilian Position and Unsuccessfully Applied for that Position, Not Just African Americans Who Applied for Positions for Which the City Administered a Test.**

The City correctly states that to have standing to represent a class, a "class representative must be a member of the class." Def. Mem. at 6 n.3 (*quoting In re Initial Pub. Offering Sec. Litig.*, No. 21-MC-92 (SAS), 2008 U.S. Dist. LEXIS 38768, at *12 (S.D.N.Y. May 13, 2008)). But it can argue that Ms. Richardson is not a member of the proposed Rejected Applicant Class only by pretending that the class is much more limited than alleged.

The Amended Complaint does not limit the proposed Rejected Applicant Class, as the City argues, to African Americans "who pass a DCAS civil service examination and are placed on an eligible list but are not appointed by the FDNY." Def. Mem. at 8. Instead, the proposed class definition in the Amended Complaint is "All African Americans who passed any applicable DCAS tests, possessed all other posted requirements for ***any posted FDNY Civilian vacancy***, and applied and were rejected by FDNY for any such position at any time between three years prior to the filing of this Complaint and the date a class is certified unless they applied for a position (a) in a job title classified by the City as an administrator or manager." AC ¶ 195 (emphasis added). *See Cardinale v. Quorn Foods, Inc.,* No. 3:09-CV-1660(JCH), 2010 U.S. Dist. LEXIS 31527, *7-8 (D. Conn. 2010) (acknowledging that plaintiff, as master of her complaint, had defined her class to exclude certain categories of damages, and deciding amount in controversy in accordance with that class definition). Similarly, the allegations identifying the claims of Plaintiffs and Class members summarize discrimination in job selection decisions without limiting that discrimination to positions for which DCAS established certification lists.

*See id.* ¶ 216 (alleging "the FDNY has (a) discriminatorily failed to select African-American outside and internal candidates to fill vacant positions while instead selecting white candidates with lesser qualifications" in violation of 42 U.S.C. § 1981); AC¶ 222 (alleging "[t]he City, through its Agency FDNY, has discriminated against the Plaintiffs and Class and Subclass Members in its job selection and compensation decisions because of their race in violation of NYC Administrative Code § 8-107.1(a)(3)").

The factual allegations underlying the Rejected Applicant Class definition and the claims asserted on behalf of Plaintiff Richardson and the Class further make clear that the challenged hiring decisions are not limited to positions for which DCAS establishes certification lists. Plaintiffs allege that "[c]andidates for ***most but not all*** civil service positions must take and pass an exam before they can be hired." AC ¶ 28 (emphasis added).[2] And Plaintiffs allege that FDNY

> hire[s] heavily into civil service positions for which DCAS has not created a standardized test. For example, the City does not have a standardized test for Community Coordinators.… [FDNY] fills most of the Community Coordinator positions with outside hires who have not had to pass a DCAS examination; these hires often are white. FDNY, for example, has twice passed over Employee Class member Liza Horsley's applications for promotion to Community Coordinator positions in favor of hires of outside white candidates, even though she has not only a Bachelor's but also a Master's degree and many years of experience with FDNY.

*Id*. ¶ 41. The City cannot read out of the Amended Complaint the allegations about heavy hiring into positions without standardized tests and the allegations about the hires into those positions often being white.

---

[2]    Discovery has revealed that only about one-third of vacant FDNY civilian positions, not "most," are filled from certification lists, Pls. 56.1 St. ¶ 21, and since some certification lists are based on DCAS' evaluation of candidates' education and experience rather than scores on a standardized test, the percentage of civilian positions filled by test-takers may be under one-third. *Id.* ¶ 23.

By all these allegations, the Amended Complaint makes clear that the proposed class includes African American rejected applicants to fill any type of vacant civilian position, not just applicants for competitive positions for which DCAS administered tests. *Id.* ¶ 216.

Ms. Richardson unsuccessfully applied for four posted FDNY positions during 2016, none of which required passing a DCAS civil service examination or being placed on an eligible list. Def. 56.1 St. (ECF No. 77) ¶¶ 5-14. Ms. Richardson also testified that she met the posted requirements for all four positions. Pl. 56.1 St. ¶ 37; *see also id.* ¶¶ 38-39.

Plaintiffs cannot be certain because merits discovery has not yet occurred but it appears that FDNY hired white applicants for two or three of the positions for which Ms. Richardson applied (to the best of Plaintiffs' current knowledge the fourth vacancy was not filled). According to the human resources data, during fiscal year 2017 (July 2016-June 2017) FDNY hired a white family liaison for its Employee Assistance Program (which appears to be for the family liaison position for which she applied), a white counselor for its Employee Assistance Program (which appears to be for the substance abuse counselor position for which she applied), and three non-African American and one African American community coordinators (one of which presumably was for the position for which she applied). Pls. 56.1 St. ¶¶ 40-44.

The community coordinator application is especially noteworthy because Plaintiffs specifically mentioned it in the Amended Complaint (in paragraph 41 quoted above) as an example of a non-competitive position for which FDNY engaged in discriminatory job selections. AC ¶ 41. As a rejected African American applicant for a community coordinator position (as well as the other three positions), Ms. Richardson indisputably is a member of the Rejected Applicant Class and her standing cannot be rejected on that basis.

**2. Ms. Richardson's Claims Raise the Same Set of Concerns As Do the Claims of Other Members of the Class Alleged in the Amended Complaint.**

While characterizing the class definition in the Amended Complaint as "extraordinarily broad" and "amorphous," Def. Mem. at 9, the City's argument reveals that the definition is not amorphous because the City full well understands its scope. The class includes, as the City states, "provisional hires in job titles for which DCAS has yet to administer an examination or establish an eligible list, as well as titles that are exempt from the civil service hiring process," in addition to hires from DCAS lists. *Id.* To be complete, the Rejected Applicant Class includes rejected African American applicants in all categories of positions at FDNY: competitive positions for which DCAS ranks candidates based on test results; competitive positions for which DCAS ranks candidates based on education and experience; competitive positions filled provisionally; non-competitive positions; labor positions; and exempt positions. Pls. 56.1 St. ¶¶ 21-29.

After its brief contention that the definition is "amorphous," the City spends more paragraphs arguing that the class is overly broad and, consequently, that Ms. Richardson lacks "prudential standing" because her claims do not raise the same concerns as do the claims of applicants for competitive positions for which DCAS ranks candidates based on test results. In making its "prudential standing" argument, the City relies primarily on the Second Circuit decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012). *NECA* states: "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual...injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." Def. Mem. at 6 (quoting *NECA*, 693 F.3d at 162 (internal citations and

quotations omitted)). The City's argument that "prudential standing" even applies to this case is highly questionable for four reasons.

First, *NECA* has been broadly criticized and rejected outside the Second Circuit for **expanding** standing, not restricting it. In *NECA*, the Second Circuit held that purchasers of securities offerings under certain circumstances have standing to represent a putative class asserting claims concerning offerings for which those purchasers did not buy a certificate. *See, e.g., Kjessler v. Zaappaaz, Inc.,* No. 4:18-0430, 2019 U.S. Dist. LEXIS 119296, at *20-21 (S.D. Tex. Apr. 24, 2019) ("Plaintiffs cite no other Circuit authority that has adopted the Second Circuit's 'same set of concerns' approach, and *NECA* has been widely criticized.") (citing five other decisions critical of *NECA's* expansion of standing in class cases); *Fed. Deposit Ins. Corp. v. Countrywide Fin. Corp.,* No. 2:12-CV-4354 MRP (MANx), 2012 U.S. Dist. LEXIS 167696, at *33 (C.D. Cal. Nov. 21, 2012) ("The decision in *NECA-IBEW* has thrown the jurisprudence in this area into disarray.… With respect, the Court is not persuaded by the reasoning of the Second Circuit.").

Second, the City admits that the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), casts doubt on the *NECA* prudential standing rule. Def. Mem. at 6 n.3.

Third, the Plaintiffs are unaware of any decision denying standing to a class representative in a putative employment discrimination class case based on *NECA*. The City has not cited any. The closest Plaintiffs have found is *Yang v. Everyday Beauty Amore Inc*., No. 18-cv-729 (BMC), 2018 U.S. Dist. LEXIS 171153 (E.D.N.Y. Oct. 3, 2018), a case arising in an employment setting. *Yang* is a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, in which the plaintiffs sought to proceed on behalf of

employees of 19 corporations that owned 19 stores, even though plaintiffs had not worked at some of the stores or been employed by each of the corporations. In its standing analysis the court cited *NECA* as a "see also" without explanation. It held that plaintiffs had standing under the FLSA's "enterprise liability" provision. *Yang*, 2018 U.S. Dist. LEXIS 171153, at *6-11. Thus, if *Yang* has any implications for this case, it supports the standing of Ms. Richardson, who at least had direct interactions with the defendant.

Fourth, Federal Rule of Civil Procedure 23 already possesses a requirement – that the claims of the representatives "are typical of the claims or defenses of the class," commonly called "typicality" – that addresses the same issue as *NECA's* requirement that defendant's "conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." Unless the Second Circuit intended to make the typicality requirement pointless surplusage in violation of one of the basic principles of statutory construction, *see United States v. Johnson*, No. 19-874, 2020 U.S. App. LEXIS 17736, at *16-17 (2d Cir. June 5, 2020), the *NECA* standard must be easier for a proposed class representative to satisfy than is typicality. Otherwise, there would be no need to consider typicality because any proposed representative whose claims were not typical of the class would already have been eliminated on standing grounds. And typicality requires only that "'the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Monaco v. Sullivan*, 737 F. Appx. 6, 15 (2d Cir. 2018) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016)). The "same set of concerns" must be an easier standard to meet than that the disputed issues occupy "essentially the same degree of centrality" for Ms. Richardson and other class members.

But even assuming that Ms. Richardson's standing is subject to challenge under *NECA*, the City does not dispute that Ms. Richardson satisfies the first prong of its standing test. She indisputable has personally suffered injury; after all, she was not hired for any of the four positions for which she applied at FDNY. Def. Mem. at 10 (challenging only her satisfaction of second *NECA* prong).

*NECA*'s second prong – that defendant's "conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants" – is easily satisfied. The claims implicate the same set of concerns because the same three individuals ultimately made the hiring decisions regardless of whether the position was filled through a DCAS-certified list. As explained in greater detail in Plaintiffs' Memorandum in Support of Motion for Class Certification (ECF No. 80), DCAS ranks each candidate who passes a test or satisfies experience and education requirements for a competitive civil service position. Pls. 56.1 St. ¶¶ 22, 23. It refers the top three not-yet-selected candidates and ties to agencies seeking to fill a vacancy, and if the agency selects a candidate it must be from one of the DCAS referrals. *Id*. ¶¶ 24, 25. For "provisional" hires and non-competitive, labor, and exempt positions, the DCAS ranking and referral process is not used and instead the positions are posted. *Id.* ¶¶ 26-30.

Aside from that difference in the source of candidates, the hiring process is essentially identical. The candidates are interviewed, with a high-level human resources ("HR") representative typically participating. *Id.* ¶ 31. After the interview the hiring manager tentatively selects a candidate and a recommended salary within the band for the position. *Id.* ¶ 32. The recommended candidate and salary then need further approvals from the control group: the head of Human Resources, the head of the Finance and Budget bureaus, and the Fire Commissioner or

his delegate. *Id.* ¶ 33. This review is not perfunctory; they can and do reject recommendations. *Id.* ¶ 34. Finally, the Candidate Investigation Division, also under the head of Human Resources, investigates the qualifications of selected candidates and may reject anyone deemed to have falsified information or otherwise not met the qualifications. *Id.* ¶ 35.

All African American rejected hiring candidates, including Ms. Richardson, are concerned by whether one or more of the control group members or the Candidate Investigation Division engaged in intentional discrimination regardless of how they became a candidate. Ms. Richardson and the other African American rejected hiring applicants also are concerned by whether FDNY's practices had a disparate impact on African Americans (see Part C below for a discussion of the City's motion to dismiss class-wide disparate impact claims). She has standing to represent all of them.

### C. DEBRA POE HAS STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF.

Despite the City's several statements in its Memorandum that Plaintiff Debra Poe has retired, that is not true. Def. Mem. at 2, 3, 4. Her retirement date is August 1, 2020, as the City admits elsewhere in its Memorandum, *id.* at 4, and until then she may return to FDNY employment. Pls. 56.1 St. ¶ 45. She has standing to seek declaratory and injunctive relief until at least then.[3]

---

[3]      Plaintiffs will notify the Court in early August whether Ms. Poe has retired or returned to FDNY.

***D.  THE CITY'S MOTION TO DISMISS THE CLASS-WIDE NATURE OF THE
DISPARATE IMPACT CLAIMS SHOULD BE DENIED, BOTH BECAUSE OF ITS
TIMING AND BECAUSE IT IS WRONG ON ITS MERITS.***

**1.  <u>The City's Motion Is Paradoxically Both Too Late and Premature.</u>**

Plaintiffs claim that FDNY's failure to adopt, or failure to implement properly, certain

HR practices, such as performance appraisal systems, disparately impacted African Americans.

Relying on the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338

(2011), the City contends that an allegation of failure to adopt a system, or failure to implement

it properly, is similar to an allegation that FDNY left these matters to the discretion of managers.

Hence, it argues, Plaintiffs' claim can be brought only on behalf of the individual Plaintiffs

because it does not give rise to claims common to class members. Def. Mem. at 14.

This contention is an affirmative defense in that it does "'not controvert the plaintiff's

proof.'" *In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d 722, 726 n.7 (S.D.N.Y. 2005)

(quoting *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998)). In the

Second Circuit, defendants must raise affirmative defenses at the "earliest possible moment" or

risk waiver of the defense. *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (internal quotation

marks omitted); *Ceara v. Deacon*, No. 13-CV-6023 (KMK), 2017 U.S. Dist. LEXIS 9645, at *12

n.8 (S.D.N.Y. Jan. 23, 2017), *vacated & remanded on other grounds*, 916 F.3d. 208 (2d Cir.

2019). While this requirement has been applied most often to early failures to assert the statute of

limitations as a defense – sometimes resulting in waiver and in other cases not – it applies as well

to other affirmative defenses. *See, e.g., Ceara*, 2017 U.S. Dist. LEXIS 9645, at *12 n.8 (failure

to exhaust administrative remedies); *Lakah v. UBS AG*, No. 07 Civ. 2799 (MGC), 2014 U.S.

Dist. LEXIS 154231, at *3 (S.D.N.Y. Oct. 30, 2014) (collateral estoppel); *Hamilton v. City of

New York*, No. 06 Civ. 15405 (DC), 2011 U.S. Dist. LEXIS 51919, at *2-3 (S.D.N.Y. May 10,

2011) (governmental agency exemption from liability for unpaid wages under New York Labor Law).

The City did not raise its defense concerning the alleged failure to adopt certain HR practices at the earliest possible moment. Indeed, it has had four prior opportunities, beginning more than two years ago, to make the same argument that it now advances in its motion to dismiss. First, after Plaintiffs filed their initial Complaint on December 1, 2017 (ECF No. 1) the City moved to dismiss the claims on February 5, 2018 (ECF No. 11). The supporting memorandum (ECF No. 12) never argued that Plaintiffs' allegations that FDNY's failure to adopt or adequately implement well-established HR practices disparately impacted African American employees are inadequate to satisfy the commonality requirement for class certification. Second, the City filed an Answer to the original complaint on October 26, 2018 (ECF No. 29), after the Court on September 28, 2018 had granted the City's motion to dismiss as to the claims of class-wide discrimination in compensation decisions but denied the motion in all other respects (ECF No. 26). That Answer denied the class allegations without explanation and, although it included six affirmative defenses, none included the contention that Plaintiffs could not plausibly satisfy the commonality requirement for class certification through their allegations that FDNY's failure to adopt or adequately implement well-established HR practices disparately impacted African American employees. *Id.* ¶¶ 136-42, 169-74. Third, on November 21, 2018, the City opposed Plaintiffs' letter motion for leave to file an Amended Complaint. (ECF Nos. 33, 36.) Again, it did not contend that Plaintiffs' allegations about FDNY's failure to adopt or adequately implement certain HR practices could not satisfy commonality. Finally, the City answered the Amended Complaint on May 24, 2019. (ECF No. 58.) This Answer, like the

previous one, denied the class allegations without explanation and did not include the current contention among the affirmative defenses. *Id.* ¶¶ 195-214, 228-33.

The City tries to justify its failure to assert this affirmative defense during the first two-and-a-half years of the litigation by stating that motions to strike class allegations are disfavored at the pleading stage and that the motion to dismiss is timely now that class discovery is complete and plaintiffs are moving for class certification. Def. Mem. at 2 n.1. Of course, "disfavored" does not mean "futile." *See Halloran v. Harleysville Preferred Ins. Co.,* No. 3:16-cv-00133 (VAB), 2018 U.S. Dist. LEXIS 191215, at *68-69 (D. Conn. Oct. 19, 2018) (explaining that motions to strike class allegations "are generally disfavored," but that a court may "exercise its discretion to strike parts of a class allegation at the motion to dismiss stage if those claims could not be maintained as a matter of law"). But even if the presumption against motions to strike class allegations adequately explains why the City did not move to dismiss the class disparate impact claims earlier in the proceedings, it does not explain why the issue was not raised in the Answer to the original Complaint or the Amended Complaint, which would have preserved the City's rights to assert it now. *See Ceara*, 2017 U.S. Dist. LEXIS 9645, at *12 n.8 (explaining that assertion of affirmative defense in an answer is "sufficient to assert the defense") (citing *Tardif v. City of New York,* 302 F.R.D. 31, 36 (S.D.N.Y. 2014), for proposition that "an affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives the plaintiff fair notice of the nature of the defense").

Paradoxically, the City's motion to dismiss also was premature. Instead of holding off on its argument until it filed its opposition to Plaintiffs' motion for class certification, or at least until it could read the bases for Plaintiffs' disparate impact motion, the City filed its motion on the same day that Plaintiffs' motion for class certification was due. As a result, the City did not

know that Plaintiffs a few hours later would submit a brief that refined their identification of the practices challenged as giving rise to the disparate impact claims. The City's motion to dismiss really is a premature opposition to class certification based on practices that Plaintiffs do not discuss in their memorandum in support of certification. The City's motion and position are totally pointless.

### 2. This Case Arises Out of Decisions Made by a Small Number of High-Ranking Officials, Not Decisions Made by Thousands of Managers As in *Dukes*.

In *Dukes*, Wal-Mart committed the challenged promotion and pay decisions to the "broad discretion" of "thousands" of "local managers" assigned to "approximately 3,400 stores" across the nation. 564 U.S. at 342-45. The Supreme Court explained that with so many decision-makers, a "'policy' of allowing discretion by local supervisors over employment matters … is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices." *Id.* at 355 (emphases omitted).

By contrast, at FDNY three individuals made the decisions challenged in this case while a few others could make recommendations or otherwise have input into the decisions, as explained in Plaintiffs' Memorandum in Support of Motion for Class Certification. Pls. Cert. Mem. at 12-16. This type of centralization dramatically distinguishes this case from *Dukes*. Even if Plaintiffs had identified in their class certification memorandum the same policies and practices that they had identified in their Amended Complaint as giving rise to a disparate impact against African Americans, and even if those policies and practices gave "broad discretion" to the decision-makers and the persons who have made recommendations to them, those policies and practices could have provided bases for finding commonality. That is because, instead of having to address how those policies and practices affected hundreds or thousands of decision-

makers, the factfinder would have to address only how they affected three individuals or, at most, the somewhat larger number who could make recommendations to them.

"[T]he involvement of top management in the discretionary decision-making is a key consideration in assessing commonality. If, for instance, a single decisionmaker[] or a small, cohesive group vetted all of the pay and promotion decisions, then the involvement of that one individual, or small group of individuals, could constitute a common practice." *Kassman*, 416 F. Supp. 3d at 280 (citations and internal quotation marks omitted) (denying certification partly because decision-making was decentralized); *see Dukes*, 564 U.S. at 349 (identifying "the assertion of discriminatory bias on the part of the same supervisor" as one type of common contention supporting a commonality finding). In harmony with the *Kassman* explanation, courts since *Dukes* have consistently found that proposed employee classes asserting disparate impact claims satisfy commonality when the challenged decisions are made by a small group of decision-makers. *See In re Johnson,* 760 F.3d 66, 73 (D.C. Cir. 2014) (refusing to review class certification decision partly because "every promotion decision was ultimately made by the Director of the Secret Service"); *Chen-Oster v. Goldman, Sachs & Co.,* 325 F.R.D. 55, 66 (S.D.N.Y. 2018) (finding commonality partly because upper management developed a list of eligible candidates and the "management committee decide[d] who [was] promoted"); *Ellis v. Costco Wholesale Corp.,* 285 F.R.D. 492, 511-12 (N.D. Cal. 2012) (finding commonality where top management made promotion decisions).

As Judge Schofield explained in *Kassman*, FDNY's practice of concentrating personnel decision-making in a "small group of individuals [] could constitute a common practice." 416 F. Supp. 3d at 280. Plaintiffs alleged the concentrated decision-making as an FDNY practice in their pleadings. AC ¶¶ 82-89, 187-90. In their memorandum in support of class certification,

Plaintiffs also asserted that the disparate impact arose out of two practices not identified in their Amended Complaint that Plaintiffs now believe had a bigger impact than did the policies identified in the Complaint and Amended Complaint: the separation of the equal employment opportunity ("EEO") and HR functions with the result that EEO considerations and monitoring had no opportunity to affect the personnel decisions, Pls. Cert. Mem. at 16-18; and FDNY's failure to adapt to civilian ranks the measures used to increase the percentages of racial minorities among firefighters because of its single-minded focus on the firefighters, *id.* at 18-20. Those two practices would have had a common impact on African Americans even if there were a larger number of decision-makers. But it has been especially easy for the two practices to have had a common impact on members of the proposed classes and subclass because the practices have had to influence only three decision-makers in order to have such an impact.

For the reasons explained above, the City's crabbed reading of the scope of the alleged hiring discrimination class should be rejected and its motion for summary judgment as to Erica Richardson's standing to represent the Rejected Applicant Class should be denied. The motion for summary judgment also should be denied as to Debra Poe's standing to seek declaratory and injunctive relief unless she does retire in early August. Finally, the motion to dismiss the class-wide disparate impact claims should be denied because of the City's delay in raising this defense, its failure to address the disparate impact claims actually asserted in Plaintiffs' motion for class certification, and its failure to take into account that FDNY's decision-making process was centralized, not decentralized.

Respectfully submitted,

_____

**VALLI KANE & VAGNINI LLP**

Robert J. Valli, Jr.
Sara Wyn Kane
Matthew Berman
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516)706-0248
rvalli@vkvlawyers.com
skane@vkvlawyers.com
mberman@vkvlawyers.com

**MEHRI & SKALET PLLC**

Cyrus Mehri
Michael D. Lieder
Aisha Rich (*pro hac vice* to be applied for)
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
arich@findjustice.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.